After recording, return to:

JOHNSTON PRATT PLLC
Attn: Sean Affleck
1717 Main St., Suite 3000
Dallas, Texas 75201

Doc 00372078   Bk OR   Vol 2112   Pg 171

# CORRECTIVE MEMORANDUM OF AMENDED AND RESTATED WORKING INTEREST ASSIGNMENT AGREEMENT

**STATE OF TEXAS**
**COUNTY OF HUTCHISON**

**ASSIGNOR:**

PONDEROSA ENERGY LLC
Richard Sands
15 Valley Drive
Greenwich, CT 06831

**ASSIGNEE:**

MOLORI ENERGY, INC. F/K/A TAIPAN RESOURCES
Joel Dumaresq
Chief Executive Officer and Director
2630-1075 W. Georgia Street
Vancouver, British Columbia
V6E3C9, Canada

**EFFECTIVE DATE:** May 6, 2016

Ponderosa Energy LLC ("Ponderosa") and Molori Energy, Inc. f/k/a Taipan Resources ("Molori," and collectively, the "Parties") entered into an Amended and Restated Working Interest Assignment Agreement as of the Effective Date above, attached hereto as Exhibit 1 ("Assignment"), under which **Ponderosa assigned to Molori a 25% undivided Working Interest as to all depths of the leases attached thereto as Exhibit A, along with a proportionate 25% New Revenue Interest**. The Assignment, together with all the terms, covenants, and conditions contained therein, are incorporated herein by reference.

This Memorandum, together with Exhibit 1 and its attachments, is placed of record for the purpose of placing all persons on notice of the existence of the Assignment. The Assignment shall be deemed to be binding on Ponderosa and Molori and their successors and assigns, and in full force and effect until modified or the Leases on the Contract Area expire. All modifications may be evidenced by an amendment to this Memorandum and placed of record.

This Memorandum is signed by Molori as of the date below but is deemed effective for all purposes as of the Effective Date stated above.

[SIGNATURE PAGE TO FOLLOW]

**EXHIBIT B**

MOLORI ENERGY, INC. f/k/a TAIPAN RESOURCES LLC

Signed: _____
Joel Dumaresq

Title: Chief Executive Officer and Director

Date: September 15, 2019

CANADA §
PROVINCE OF British Columbia §
CITY OF Vancouver §

Before me, on this day personally appeared Joel Dumaresq, known to me to be the person whose name is signed to this document, and who acknowledged to me that he executed this document for the purposes and consideration therein expressed on behalf of Molori Energy, Inc., f/k/a Taipan Resources LLC.

Given under my hand and seal of office on this date: Sept 15, 2019.

_____
Notary Public

Doc 00372078  Bk OR  Vol 2112  Pg 173

Amended and Restated Working Interest Assignment Agreement

**THIS FARMOUT AGREEMENT** (this "**Agreement**") is entered into on the 6th day of May, 2016 ("Execution Date") by and between:

1. **Ponderosa Energy, LLC** a corporation existing under the laws of Delaware, USA, whose office is located at 15 Valley Drive, Greenwich, CT 06831 (hereinafter referred to as "**Assignor**" which expression shall, unless repugnant to or inconsistent with the context, mean and include any successors or permitted assigns) of the **FIRST PART**; and

2. **Taipan Resources Inc**, a company organised and existing under the laws of Canada, whose registered office is Suite 2600, 1066 West Hasting Street, Vancouver, BC, V6E 3X1, Canada (hereinafter referred to as "**Assignee**" which expression shall, unless repugnant to or inconsistent with the context, mean and include any successors or permitted assigns) of the **SECOND PART**.

The Assignor and the Assignee may hereinafter sometimes be referred to individually as "**Party**" and collectively as the "**Parties**".

RECITALS

   A. On March 23, 2016, Assignee and Assignor entered into an agreement (the "**Original Agreement**") for assignment of a 25% working interest in certain leases.

   B. Each of the Assignee and the Assignor wishes to amend the Original Agreement and this Agreement amends and restates the Original Agreement. Parties agree that the Original Agreement is hereby superseded by this Agreement.

   C.   This Agreement constitutes the agreement between the Assignee and the Assignor for the assignment to the Assignee of a twenty-five percent (25%) undivided Working Interest as to all depths of the leases detailed in **Exhibit A** attached hereto (the "**Leases**") and incorporated herein by reference along with a proportionate 25% Net Revenue Interest.

   For the purposes hereof, a twenty-five percent (25%) undivided working interest as to all depths of each of the Leases along with a proportionate 25% Net Revenue Interest is hereinafter referred to as the "**Assigned Interest**".

   Where:

   **Working Interest** means the share of well drilling or operating expenses paid; and
   **Net Revenue Interest** means the share of income received.

Assignors Initials _____   Page 1 of 13   Assignees Initials _____

**EXHIBIT 1**

Amended and Restated Working Interest Assignment Agreement

Now, therefore, for and in consideration of USD100.00, the promises set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Subject to the satisfaction of the Conditions Precedent, and in exchange for the Consideration, Assignor shall assign and transfer to Assignee, and Assignee agrees to accept, the Assigned Interest and the Parties shall execute and deliver the Deed of Assignment.

2. Contemporaneously with the execution and delivery of the Deed of Assignment, Parties shall execute the Joint Operating Agreement.

3. Consideration.

   As Consideration for the transfer of the Assigned Interest hereunder, Assignee agrees and undertakes to pay:

i. USD 500,000 in cash upon execution of the Deed of Assignment and the Joint Operating Agreement; and
ii. Assignor's Working Interest share of approved costs incurred under an AFE (as defined in the Joint Operating Agreement) in compliance with the terms of the JOA subject to a total cap of USD 750,000.

   Execution of the Deed of Assignment and the Joint Operating Agreement and payment of the amount set forth in Clause 3 (i) above shall occur simultaneously and the occurrence of these events shall be termed "**Closing**", as more fully described in Clause [6] hereof.

4. Title Examination. Prior to the Closing hereof Assignor shall furnish to Assignee any and all abstracts and title opinions covering the Leases which are in Assignor's possession or to which Assignor has access. Assignee shall conduct, at Assignee's expense, any examination of title to the Leases which Assignee deems necessary. Assignee will promptly thereafter advise Assignor of any title objections and requirements with respect to any of the Leases. If, in Assignee's opinion, title defects cannot be cured or Assignor is unable or unwilling to cure such defects, Assignee may:

   I. Terminate this Agreement by written notice to Assignor, in which event, all rights, duties and obligations hereunder shall cease; or

   II. Accept the defect.

Assignors Initials _____        Assignees Initials _____

Amended and Restated Working Interest Assignment Agreement

5. Closing. Closing shall take place as soon as practicable after satisfaction of the Conditions Precedent, and in any event no later than May 31, 2016 and shall be conducted at Assignor's offices, or at such other time and place as to which the Parties hereto may mutually agree. In the event Closing does not take place by May 31, 2016, for whatever reason, Assignee or Assignor may then or at any time thereafter terminate this Agreement by written notice to the other Party. Neither Party shall be liable to the other Party hereto for any loss or damage as a result of such termination.

6. At Closing the following shall occur simultaneously:

   I. Assignee and Assignor shall execute the **Joint Operating Agreement** (or "**JOA**") governing their relationship as joint Working Interest owners of the Leases in form as annexed herewith as **Exhibit B**;

   II. Assignor shall execute, acknowledge and deliver to Assignee a **Deed of Assignment** conveying title in the Assigned Interest to Assignee in form as annexed herewith as **Exhibit C**;

   III. Assignor shall deliver to Assignee copies of all records relating to the Leases;

   IV. Assignee shall pay the sum referred to in Clause 3 (i) above.

7. Access. Prior to Closing, Assignee shall have free access to all of Assignor's books and records pertaining to the Leases, including financial, engineering and geological books and records, lease records, title opinions, files, contracts and any other documents in any way affecting such Leases and at the Closing copies of all of such books and records shall be delivered to Assignee.

8. **Assignor's Representations and Warranties**

A. Assignor makes the following representations and warranties to Assignee as of the date hereof and as of Closing:

   a) Assignor holds the rights to 100% (one hundred percent) undivided Working Interest in the Leases, free and clear of any liens, claims, burdens or encumbrances, other than the liens, claims, burdens or encumbrances in favor of the owner according to the terms of the Leases and applicable laws. Assignor holds rights to 100% (one hundred percent) Net Revenue Interest in the Leases.

   b) The Leases are in full force and effect and no notice of default, termination, or breach thereunder has been received by Assignor.

   c) There are no material claims, demands, actions, suits, governmental inquiries, or proceedings

Assignors Initials _____   Assignees Initials _____

Amended and Restated Working Interest Assignment Agreement

pending or to Assignor's knowledge threatened in connection with the Leases.

d) The Assignor is in full compliance with all its obligations under the Leases and all other related agreements.

e) The outstanding terms of the Leases are as set forth in **Exhibit D**. The obligations of Assignee to the owners under the Leases are as set forth in Exhibit E.

f) Assignor is not a party to any farm-in or farm-out agreement in relation to the Assigned Interest or to any other agreement which includes an obligation to sell, transfer or otherwise dispose of any of its rights and obligations in respect of the Leases other than as set out herein.

B. Neither the Assignor, nor any of its affiliates, have in relation to the Leases

a) offered, paid, or promised to pay money, nor offered, given or promised to give anything of value, directly or indirectly, to any official of any government or of any government's agencies, instrumentalities or companies, or of any public international organisation, or to any political candidate, any political party, or any political party official for the purposes of influencing any act or decision of such officials in their official capacity, or inducing such officials to (i) use their influence with any government or state-owned company to affect or influence any act or decision of such government or company; (ii) assisting the Assignor or its affiliates in obtaining or retaining business for or with, or directing business to, the Assignor or its affiliates; or (iii) securing any other improper advantage;

b) made or knowingly allowed a third party to make any improper payments or to perform an unlawful act; or

c) made any facilitating payments to any public official; where such act, payment, gift or promise would violate the laws of Canada or USA.

C. No official of any government, any agency or state-owned company, any political party, or any public international organisation, has at any time had any legal or beneficial interest in the Assignor or any of its affiliates.

9. <u>Mutual Representations and Warranties.</u> Each of the persons that is a signatory hereto covenants, warrants, and represents that said person and the Party for which said person is a signatory:

Assignors Initials _____    Assignees Initials _____

Amended and Restated Working Interest Assignment Agreement

I. Acknowledges having carefully read all of this Agreement, and each Party, as its own, act voluntarily, consents to and accepts the terms of this Agreement without duress, coercion, reservation, or undue influence; and

II. Has received all the information necessary or appropriate for deciding whether to enter into and be bound by this Agreement and the terms and conditions herein and that any information, records and data furnished in connection with the transaction envisaged herein were and are accurate in all material respects; and

III. Fully understands the scope and effect of all terms and conditions of this Agreement and desires to be bound by this Agreement; and

IV. Acknowledges, warrants and represents that the terms of this Agreement are clear and unambiguous; and

V. Is empowered with the full and complete authority to execute this Agreement; and

VI. Is legally competent to execute this document and accepts full responsibility therefor and assumes the risk of any mistake of facts stated herein; and

VII. Has entered into this Agreement of said party's own free will and in accordance with said party's own judgment, and after consultation with said party's legal and financial counsel; and

VIII. Has not been induced to enter into this Agreement by any statement, act, or representation of any kind or character on the part of any other Party except as expressly stated in this Agreement and any attachment hereto; and

10. Indemnity for Breach

10.1 Each Party shall have the right to terminate this Agreement by notice in writing to the other Party prior to Closing if there is a breach by the other Party of any of its representations and warranties hereunder. Parties may decide that assignment of the Assigned Interest will nevertheless take place.

10.2 In the event a breach of a representation or warranty is discovered after Closing, each of the Parties agrees to indemnify and hold the other Party harmless for any claims, causes of action, or liabilities, which arise out of the breach of any of the warranties and representations by the

Assignors Initials _____    Assignees Initials _____

Amended and Restated Working Interest Assignment Agreement

indemnifying Party. Provided however that the liability of each Party arising out of a breach of any of its warranties and representations hereunder shall be limited as follows:

(i) Assignor's total aggregate liability for any claims brought against him by Assignee shall be limited to a maximum of USD 1,500,000.

(ii) Assignee's total aggregate liability for any claims brought against him by Assignor shall be limited to a maximum of USD 1,500,000.

(iii) The time period for submitting any valid claims by a Party against the other Party shall be limited to 2 (two) years following Closing.

11. During the period from the date hereof until Closing, Assignor shall comply with the following:

11.1 Continue to carry on its activities under the Leases in the ordinary course and in accordance with good oil and gas field practice;

11.2 Assignor shall promptly notify Assignee and provide details upon the occurrence of:

(a) any written notice of default or termination received or given by Assignor with respect to the Leases, or

(b) any written notice of any pending or threatened claim, demand, action, suit, inquiry or proceeding related to the Leases, or

(c) any material damage, destruction or loss to major assets under the Leases, or

(d) any event or condition between the date of this Agreement and Closing that (i) would have a material adverse effect on the Leases, or (ii) would render impossible Assignee's right to the Assignment.

12. Conditions of Closing. The conditions for Closing ("**Conditions Precedent**") are as follows:

I. The warranties and representations contained in Clause 8 hereof shall be true and correct at Closing;

II. Satisfactory completion of due diligence by the Assignee prior to closing;

Assignors Initials _____           Assignees Initials _____

Amended and Restated Working Interest Assignment Agreement

    III.    None of the events listed in Clause 11.2 shall have occurred and there shall have occurred no fire, accident, casualty or other occurrence resulting in a diminution of the value of the Leases or the ability of the wells thereon to produce;

    IV.    Assignee shall have received from Assignor an NI 51-101 technical reserve report on the Assigned Interest, such report to be prepared to TSX Venture Exchange standards;

    V.    If required, Assignee shall have received final TSX Venture Exchange approval to the assignment contemplated herein; and

    VI.    If required, Assignor shall be received approval to the assignment contemplated herein from the owner of the Leases.

13. <u>Effective Date of Sale</u>. The effective date of the assignment hereunder shall be April 30, 2016 (the "**Effective Date**"), with the effect that the Assignee shall be entitled to all oil and gas produced from and after the Effective Date, including production in storage, if any as of the Effective Date, and all proceeds and accounts receivable attributable to such production and Assignee shall bear all expenses with respect to the Assigned Interest which are attributable to any period of time commencing on or after to the Effective Date. Assignor shall be entitled to all oil and gas produced prior to the Effective Date, excluding production in storage, if any as of the Effective Date, and all proceeds and accounts receivable attributable to such production and Assignor shall bear all obligations and expenses at Closing with respect to the Leases attributable to any period of time prior to the Effective Date. All liens, if any, and outstanding or pending invoices related to work performed on the wells will be paid by Assignor at Closing. Any monies received by either Assignee or Assignor which, under the terms of this paragraph, belong to the other Party shall be immediately paid over to such Party.

14. <u>Obligations Post Closing</u>: Following Closing, Assignor shall register Assignee as holder of the Assigned Interest with any relevant governmental agency to the extent necessary.

15. <u>Binding</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

16. <u>Survival</u>. The representations, warranties, covenants and agreements of Assignor and Assignee under this Agreement shall survive the Closing.

17. <u>Construction</u>. Every covenant, term and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against any party. The signature of the parties below signifies their agreement to the terms and conditions hereof.

18. <u>Entire Agreement</u>. This instrument contains the entire agreement of the Parties pertaining to the subject matter hereof. It may not be changed orally but only by an agreement in writing signed

Assignors Initials _____                        Assignees Initials _____

Amended and Restated Working Interest Assignment Agreement

by the Party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

19. Compliance with Laws. This Agreement and all operations hereunder shall be subject to all valid and applicable Federal and State laws, and all valid and applicable orders, laws, rules and regulations of any Federal or State authority having jurisdiction.
20. Counterparts. This Agreement may be executed by the Parties in any number of counterparts, each of which shall be deemed an original instrument, but all of which together shall constitute but one and the same instrument.
21. Governing Law and Dispute Resolution: This Agreement shall be construed in accordance with the laws of the State of Texas without regard to choice of law principles. Disputes hereunder shall be subject to the exclusive jurisdiction of Texas.

**IN WITNESS WHEREOF** the Parties have executed these presents through their authorized representatives on the date first above written.

"Assignee"

Taipan Resources Inc.

By _____
Joel Dumaresq, Director

"Assignor"

Ponderosa Energy, LLC

By _____
Richard Sands, Managing Member

Assignors Initials _____                                    Assignees Initials _____

D8572078 Bk 21Y91 181

Amended and Restated Working Interest Assignment Agreement

Assignors Initials _____          Assignees Initials _____

D8572078 Bk 21Y91 181

## Exhibit A

### ATTACHED HERETO AND MADE A PART HEREOF IS A LIST OF LEASES

Archer B & C, B-7G, C-2G
Armstrong 20 & 24
Armstrong M B Lse
Barrett C S Lse
Black # 1
Block, Ida Lse
Bobbitt Lse
Bryan Lse
Burnett A Lse & Burnett B Lse
Chapman Lse
Continental Sanford Lse
Cooper Lse
Davis 1R
Dee O Gee Lse
Foxx Lse
Gulf-Sanford A 1R
Gulf-Sanford A-1
Hackley, EP & Watters WL Lse
Hamilton Lse
Herring E Lse
Johnson A K 1
Johnson, Johnson A, Johnson D, Johnson G & Pruett B Lse
Johnson K 1R
Johnson O 1R
Killough Lse
Kirby Lse
Klyne 1 & 2
Lasiter Lse
Lil Randi & Kyle Lse
Logan A Lse
Morrison 4213
National Lse
Perkins JJ Lse
Phillips B
Phillips C 1
Pickens Lse
Pritchard, Sallie Lse
Rice Patty 1
Sanford 160-1, 160-1R, 480-1
Sanford A, B, C, Sanford-Coon Lse
Sanford D, M & Sanford J.M.
Sanford K1 & K-2R

Sanford M, Southbend & Jimmy II Lse
Hamilton Lse
State of Texas A-B
State of Texas A-C
State of Texas A
Stevenson, O Roy Lse
Thompson & Thompson, T. Lse
Ware R C Lse
Watkins A Lse
Whittenburg 1
Whittenburg, J.A. C Lse
Witherbee, Lober Nellie & Phillips Otis Lse
Worley Lse
Worley P A Lse & Worley-Reynolds Lse
Yake B Lse

Page left intentionally Blank

Doc 00372078  Bk OR  Vol 2112  Pg 185

Page left intentionally Blank

STATE OF TEXAS                COUNTY OF HUTCHINSON

I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of:
Hutchinson County
as stamped hereon by me.

Sep 19,2019 at 01:12P

Receipt Number - 118758

By,
Kelly Ratliff, Deputy

Jan Barnes, Hutchinson County Clerk
Hutchinson County

Page 13 of 13